UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 06-10179 |
| OCA, INC., et al. | SECTION "B" |
| Debtors | CHAPTER 11 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

OCA, INC., et al.
   Plaintiffs

VERSUS                                                          ADV.P.NO. 06-1113

HECTOR M. BUSH DMD, et al.
   Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

OCA INC., et al.                                                CONSOLIDATED WITH
   Plaintiffs

VERSUS                                                          ADV.P.NO. 06-1162

BRENT HASSEL, DDS, et al.
   Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JENNIFER A. MEADER, DMD, et al.                                 CONSOLIDATED WITH
   Plaintiffs

VERSUS                                                          ADV.P.NO. 06-1149

OCA INC., et al.
   Defendants

## REASONS FOR ORDER

This matter came on for hearing on April 11, 2007 on the motion filed by Drs. Hassel and Meader against the debtor, OCA, Inc. for partial summary judgment on the illegality of certain business service agreements (P-97). For the reasons set forth below,

1

the motion is granted, and the business service agreements between the doctors and the debtor are declared illegal as a matter of law under the law of the state of Washington. It is clear under the Washington case law that an illegal contract shall not be enforced by the courts, and that the parties to such a contract are left where the court finds them and thus have no rights of action based on the illegal contract. Therefore, the court dismisses the complaints of the debtor and Dr. Meader and the respective counterclaims thereto.

**I.     Background Facts**

OCA, Inc. ("OCA") is a company that provides services to affiliated dental practices, primarily orthodontists, through separate subsidiaries that operate in each state where there is an affiliated practice. The basic business model of OCA and its subsidiaries is that they enter into business services agreements ("BSAs") with the affiliated practices. OCA provides the necessities for starting up and running a dental practice, i.e., office space, equipment, trained office staff, computer software for managing the practice, etc. In exchange the affiliated practice pays a monthly service fee based on the expenses of the practice and a percentage of the practice's profits. These BSAs are the primary operating asset of OCA and are the means through which it generates its revenue.

Drs. Meader and Hassel are orthodontists in the state of Washington that signed BSAs with OCA's Washington subsidiary ("OCA Washington"). Dr. Hassel signed a service agreement with OCA Washington on October 10, 1995. Dr. Meader signed a service agreement with OCA Washington on April 23, 1996, with an amendment signed

2

on June 21, 1997.[1] Although not identical, the Meader and Hassel BSAs are similar enough that the court need not engage in a separate discussion of their respective provisions. The provisions of the agreements that the court finds particularly relevant to the question of illegality are 1) the lengthy period of time covered by the BSAs, and 2) the profit sharing provisions of the BSAs.

On March 14, 2006 OCA, Inc. and certain of its subsidiaries including OCA Washington filed petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*[2] On June 23, 2006 OCA filed an adversary complaint against Dr. Hassel setting forth claims for declaratory relief, specific performance, reformation of contract, breach of contract, promissory estoppel, conversion, unjust enrichment, quantum meruit, fraudulent conveyance, attorneys' fees and court costs under eight separate counts.[3] Dr. Hassel answered and filed a counterclaim alleging breach of contract, breach of fiduciary duty, seeking declaratory relief that the BSA is illegal and seeking attorneys' fees.

On June 14, 2006 Dr. Meader filed an adversary complaint against OCA and its Washington subsidiary alleging claims of breach of contract, breach of fiduciary duty,

---

[1] Dr. Hassel's BSA is attached to the motion as Exhibit D; Dr. Meader's BSA is attached to the motion as Exhibit E.

[2] A small number of additional subsidiaries filed Chapter 11 petitions on March 17, 2006 and June 2, 2006. All 51 subsidiary debtors' cases have been consolidated and are being jointly administered with the main case as Case Number 06-10179.

[3] Adversary Proceeding No. 06-1162. The numerous adversary proceedings related to the main bankruptcy case were later consolidated for trial under the case number 06-1113.

3

seeking declaratory relief that the BSA is illegal and seeking attorneys' fees.[4] OCA filed an answer and a counterclaim seeking declaratory relief, specific performance, reformation of contract and attorneys' fees and costs. Drs. Hassel and Meader together filed their motion for partial summary judgment and a hearing was held on April 11, 2007. The court granted the motion from the bench but informed the parties that it would enter written reasons for its decision.

## II. Legal Analysis

### A. Standard for Summary Judgment.

Summary judgment should be granted where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5] The party seeking summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.[6] A material fact is one that "might affect the outcome of the suit under the governing law," and an issue is genuine when, "the evidence is such that a reasonable [factfinder] could return a verdict for the

---

[4] Adversary Proceeding No. 06-1149.

[5] Federal Rule of Civil Procedure 56(c) made applicable herein by Federal Rule of Bankruptcy Procedure 7056.

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Willis v. Roche Biomedical Lab, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

nonmoving party."[7] All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.[8] There are no genuine issues of material fact so the court turns directly to the issue of whether the movants are entitled to a partial summary judgment as a matter of law.

### B. Whether the BSA is legal or illegal.

The BSAs provide, and the parties agree, that the laws of the state of Washington shall govern their validity, interpretation and performance. Several courts in Washington have opined on that state's laws regulating the practice of dentistry and the validity of various arrangements under those laws. Thus, there is ample precedent for the court to look to in determining whether the agreements are illegal under the laws of the state of Washington. The statute regulating the practice of dentistry in Washington is the Revised Code of Washington Chapter 18.32.[9]

---

[7] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.ed.2d 202 (1986).

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[9] RCWA 18.32.002 *et seq.* Particularly at issue in this case are RCWA 18.32.020(3) and 18.32.675(1). RCWA 18.32.020 states in relevant part:

> A person practices dentistry, within the meaning of this chapter, who
> (3) owns, maintains or operates an office for the practice of dentistry.

RCWA 18.32.675 states in relevant part:

> (1) No corporation shall practice dentistry or shall solicit through itself, or its agent, officers, employees, directors or trustees, dental patronage for any dentists or dental surgeon employed by any corporation: PROVIDED, That nothing contained in this chapter shall prohibit a corporation from employing a

Washington cases establish that, "neither a corporation nor any unlicensed person or entity may engage, through licensed employees, in the practice of the learned professions."[10] Further, Washington courts have considered a corporation to be engaged in the practice of a profession even though it is not establishing any "control over the professional judgment" of the professional in his practice.[11] In *State ex rel. Standard Optical Co. v. Superior Court*, 17 Wash.2d 323, 328, 135 P.2d 839 (1943), a corporation rented space to and advertised for an optometrist; this was enough for the court to find the corporation guilty of practicing optometry. In *State v. Boren*, 36 Wash.2d 522, 219 P.2d 566 (1950), the court looked at a conditional sales contract between two unlicensed partners and a licensed dentist and determined that the unlicensed partners illegally owned and operated a dental office within the meaning of the Washington statute which defined one practicing dentistry as one "who owns, maintains or operates an office for the

---

dentist or dentists to render dental services to its employees: PROVIDED, FURTHER, That such dental services shall be rendered at no cost or charge to the employees; nor shall it apply to corporations or associations in which the dental services were originated and are being conducted upon a purely charitable basis for the worthy poor, nor shall it apply to corporations or associations furnishing information or clerical services which can be furnished by persons not licensed to practice dentistry, to any person lawfully engaged in the practice of dentistry, when such dentist assumes full responsibility for such information and services.

[10] *State ex rel. Standard Optical Co. v. Superior Court*, 17 Wash.2d 323, 328, 135 P.2d 839 (1943). *See also Morelli v. Ehsan,* 110 Wash.2d 555, 756 P.2d 129 (1988); *State v. Boren,* 36 Wash.2d 522, 219 P.2d 566 (1950).

[11] *Fallahzadeh v. Ghorbanian*, 119 Wash.App. 596, 82 P.3d 684 (Wash.App.Div.1 2004); *Standard Optical* at 326. *See also Engst v. Orthalliance*, W.D.Wash. Case No. C01-1469C (Order dated March 1, 2004 at p. 11).

...

practice of dentistry."[12]  One factor the court found relevant was that one of the unlicensed partners managed the dental office, "buying the supplies and watching the charts and making out the accounts and payments. . . , and looking after the advertising."[13]  A second factor the court found important was that the payments to the unlicensed partners were structured in such a manner that they amounted to a profit sharing arrangement.  The court held that the activities of the manager/partner taken together with the payments to the unlicensed partners clearly put the unlicensed partners within the state's definition of the practice of dentistry.[14]

On the other hand, *Prichard v. Conway,* 39 Wash.2d 117, 234 P.2d 872 (1951) is a Washington case where the court found that a widow, who had contracted to sell her deceased husband's dental practice to a licensed dentist, was not engaged in the unauthorized practice of dentistry.  The debtor argues that *Prichard* is more akin to its situation and urges the court to apply *Prichard* in this case.  In *Prichard,* the widow was left with a dental practice after her husband's death.  She contracted to sell the practice to a licensed dentist who could not afford to make a down payment.  The parties thus entered into an agreement that gave the widow a large percentage of the net profits of the business for the first five years it was in operation under the new owner; the same contract stipulated that she would have the right to manage the business aspects of the

---

[12] *Boren* at 532.

[13] *Boren* at 524.

[14] *Boren* at 532.

practice. The court differentiated *Prichard* from *Boren*, stating, "[w]e are not here concerned, as we were in the Boren case, with non-licensed individuals who, having a chain of dental offices, were ostensibly selling one of them to a licensed dentist but were actually pocketing all the profits from the operation through bonus payments."[15] The court went on to elaborate why the arrangement before it was acceptable:

> It is common knowledge that many doctors and dentists, and certainly most clinics, leave the details of business management such as the keeping of business records, the issuing of statements, the collection of accounts, and the details of disbursements for supplies and equipment, to personnel employed for that purpose. The particular title of the individual or individuals who do that work is not material, and whether it be office manager, office secretary, or bookkeeper, we do not regard the handling of those details as constituting the practice of medicine or dentistry, although their capable performance may be essential to make that practice profitable. The fact that the same details are supervised by one who, instead of being an employee, is selling the practice under a conditional sales contract, does not of necessity constitute such ownership, maintenance, or operation of an office for the practice of medicine or dentistry as is contemplated by [the statute], although it could well be a factor requiring a closer scrutiny of the entire transaction to determine whether it is actually what it purports to be or, instead, is a scheme or subterfuge to violate the law.[16]

The debtor argues that it is merely a bookkeeper and office manager for Drs. Meader and Hassel and that under *Prichard*, it does not own, maintain or operate a dental practice within the meaning of the Washington statute. That this is an oversimplification of the services the debtor renders, the control the debtor has over the business and everyday affairs of Drs. Meader and Hassel, and the amount and manner by which the debtor shares

---

[15] *Prichard* at 121.

[16] *Prichard at 122.*

in the net profits of these two orthodontic practices is made clear by the following case.

In *Morelli v. Ehsan*, 110 Wash.2d 555, 756 P.2d 129 (1988), the Supreme Court of Washington examined a partnership agreement between a physician, Ehsan, and a non-physician, Morelli, under a provision of the Revised Code of Washington regulating the practice of medicine that is similar to the statute regulating the practice of dentistry. After several years of operation, the partners had a falling out and Morelli, petitioned the court for a dissolution of the partnership and an accounting. The trial court found that the partnership agreement was illegal. The court examined the nature of the agreement:

> [Morelli] was in a general partnership with a physician as an equal partner. While Morelli asserts his only duties were as business manager, the evidence is to the contrary. The partnership agreement clearly establishes Morelli as more than a business manager of the clinic. He was a general partner entitled to [an] equal share of the profits, to equal rights in the management, to hire nurses, and to all the rights and duties of a general partner under the laws of the state of Washington. Furthermore, the record indicates Morelli exercised those rights.[17]

The court found Morelli's involvement in the medical practice to be enough to constitute the unauthorized practice of medicine and upheld the trial court's determination that the partnership was illegal on its face. Here, the BSAs give the debtor the right to exercise management control, hire staff, oversee the bank accounts of the practices and determine what equipment to buy for the office. This is at least as much control as the *Morelli* court found in that case.

A more recent decision by the Washington Court of Appeals in *Fallahzadeh v.*

---

[17] *Morelli* at 132-33.

9

*Ghorbanian*, 119 Wash.App. 596, 82 P.3d 684 (Wash.App.Div.1 2004) found that a lease agreement between a dental practice and a non-dentist who were tenants in common, each owning half of the building, and where the rental payments to the non-dentist consisted of 50 percent of the practice's net profits, was an illegal agreement. The non-dentist in that case also acted as the operating manager of the dental practice and handled the practice's accounts.

> Fallahzadeh argues that *Boren* is distinguishable because [Fallahzadeh's] firing demonstrated that Ghorbanian retained complete control of all business and professional activities for his practice. Under Washington law, however, Fallahzadeh's non-involvement in the delivery of professional services is not determinative. . . . Furthermore, this distinction is not particularly persuasive in light of the 50 percent net profit rent provision and the other terms of the lease. Regardless of whether Fallahzadeh was employed by the practice, he still retained a *substantial beneficial interest in the practice's profits*. In this respect, the lease is no different than *Boren*'s conditional sales contract, which also guaranteed to the sellers a steady income stream from the practice. Furthermore, Fallahzadeh reserved significant rights under the lease as a landlord. He had sole and exclusive discretion to approve any changes, modifications, or alterations. Thus, his absence from the practice's day-to-day operations did not affect his ability to control certain aspects of Ghorbanian's practice, such as making physical improvements to the premises that might be necessary for patient care (emphasis added).[18]

The court goes on to note that the effect of the lease was to enable the non-dentist to obtain a financial interest in the dental practice in violation of Washington law.

Finally, the court takes notice of two recent unpublished decisions by Washington courts. In *Engst v. Orthalliance, Inc.,* an order issued by the court held that through a series of contracts, Orthalliance effectively owned, maintained or operated an office for

---

[18] *Fallahzadeh* at 603-04.

the practice of dentistry in violation of the law.[19]  Orthalliance was a predecessor of the debtor and the arrangement in that case although not identical to the case before this court is substantially similar.

In *Nicholson v. Orthodontic Centers of Washington,* a Washington trial court granted a motion for summary judgment to an orthodontist who had entered into a BSA contract similar to the BSA involved here.  The orthodontist in that case had entered into a BSA with the debtor's Washington subsidiary, just like the doctors in the case before this court.  The *Nicholson* court found that BSA and several of its provisions illegal under Washington law.  Specifically, the court held the following:

> As compensation for its services it agreed to render to Dr. Nicholson's practice, OCS was to be reimbursed "dollar-for-dollar" for all "Center expenses incurred by OCS for the applicable period", plus a flat fee of $22.22 per Patient Hour, plus a "performance fee" equal to 50% of the orthodontic practice's Net Operating Margin.  OCS thus not only played a substantial role in the operation and maintenance of the orthodontic practice, it also had a substantial beneficial interest in the orthodontic practice's profits - the key factor that Washington courts have found violates Washington's prohibition against non-professionals practicing dentistry.[20]

The provisions of the BSA that the *Nicholson* court found violated the Washington statute is almost identical to the compensation provisions in the Meader BSA.[21]  The Hassel BSA is slightly more confusing to interpret but appears to the court to also contain

---

[19] *Engst v. Orthalliance*, W.D.Wash. Case No. C01-1469C (Order dated March 1, 2004).

[20] *Nicholson, supra* at pp. 3-5.

[21] Meader BSA at § 4.3.

11

similar compensation provisions.[22] The court finds the compensation scheme outlined in the BSAs of both Meader and Hassel provides OCA a "substantial beneficial interest in the practice's profits."[23] Additionally this court finds it problematic that the term of the BSA is 20 years with the option given to the debtor to renew the agreement for up to two additional 10 year periods. Thus, the arrangement could theoretically continue for a period of 40 years. Bookkeepers and office managers are generally not parties to 40 year- or even 20 year- contracts for their services. Finally, there are several provisions in the BSAs that give a disturbing amount of control over the practices to the debtor, including responsibility for all billing and collection on behalf of the orthodontic practice, responsibility for making all disbursements from the orthodontic practice's bank account, and responsibility for recruiting and employing all staff required for the orthodontic practice's operations. The BSAs involved here are far closer to the situations presented in *Boren, Fallazadeh, Engst* and *Nicholson* than *Prichard.* Application of the principles set forth in these cases leads this court to the inevitable conclusion that here the BSAs violate Washington law.

    C.    **The effect of the illegal contract.**

Under Washington law if the business of a partnership is illegal, courts will not entertain actions for accounting and distribution of the assets. Nor will courts enforce

---

[22] Hassel BSA at §§ 3.1 and 3.4.

[23] *Fallahzadeh* at 603.

illegal agreements.[24] When a court determines that an agreement is void as against public policy, the rule is to leave the parties in the position where the court finds them even if they acted in good faith.[25] "The parties are left where the court finds them regardless of whether the situation is unequal as to the parties. If the parties are not in pari delicto, however, the less culpable party may maintain an action based on an illegal contract."[26]

In *Morelli v. Ehsan,* the court found that neither party entered into the transaction with knowledge that the transaction was illegal, and thus, the parties to the contract were in pari delicto as to fault for entering into the illegal agreement. The court further held that under the laws of Washington, the remedy was to leave the parties where the court found them. The court denied Morelli's request for an accounting, which meant that he was not able to recover the money he had invested in the partnership. The court further held that Ehsan, as the only person authorized to practice medicine, was to assume all liabilities associated with the illegal partnership practice.[27]

In *Fallahzadeh v. Ghorbanian*, the parties consulted an attorney and were told that although it was illegal to form a partnership between a dentist and a non-dentist, they could be partners in the purchase of the building that was subsequently leased to the dental practice. The court found no evidence that the parties were not in pari delicto, "as

---

[24] *Morelli* at 561-62.

[25] *Fallahzadeh* at 605.

[26] *Morelli* at 562.

[27] *Morelli* at 563.

both entered into this agreement willingly and with full knowledge of its provisions." Thus, the court denied requests for attorneys' fees and declined, "to effect a judicial disposition of the parties' debts, entitlement, or obligations."[28]

In *Engst v. Orhalliance*, the court found that both parties were aware of the restrictions on the practice of dentistry in the state of Washington, and that there was no evidence to suggest that one party was trying to trick the other party, which lead the court to find the parties in pari delicto. The court thus dismissed both the plaintiffs' claims and the defendant's counterclaims and held that the defendant was to retain ownership of its assets and the plaintiffs could keep the payments they had received from the defendants.[29]

In the case before this court, there have been no allegations that would lead the court to find that the parties are not in pari delicto. The debtor is a party to numerous similar agreements and is certainly aware of the prohibitions on the corporate practice of dentistry, and the doctors have not made any claim that they were duped into signing the agreement unaware of the provisions of the Washington law that the agreement violated. Thus, the parties are equally at fault. The court dismisses the complaint of the debtor against Dr. Hassel as well as Dr. Hassel's counterclaims. The court also dismisses the complaint of Dr. Meader against the debtor as well as the debtor's counterclaims. The debtor is entitled to possession of its leased property and owned equipment. The doctors shall immediately return and/or release all such property of the debtor. The debtor may

---

[28] *Fallahzadeh* at 605.

[29] *Engst* at 16.

retain all payments made to it by the doctors. The doctors may retain all payments they have received from the debtor as well. The doctors are to assume all liabilities of their respective dental practices, other than those liabilities owed to the debtor. The debtor shall turn over any and all records it still retains related to the dental practices. No party shall have any further cause of action related to the BSAs. No party shall receive attorneys' fees or costs.

### III. Conclusion

For the reasons stated above, the motion for summary judgment is granted, and the business service agreements between the doctors and the debtor are declared illegal under the laws of the state of Washington as a matter of law. The court dismisses the complaints of the debtor and Dr. Meader and the respective counterclaims thereto.

New Orleans, Louisiana, June 1, 2007.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge